UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ELIJAH ISMAIL MUHAMMAD GARRISON, <br><br>  Plaintiff, <br><br> vs. <br><br> LISA BALDERRAMA, MADISON COUNTY SHERIFF'S DEPARTMENT, and MADISON COUNTY, TENNESSEE, <br><br>  Defendants. | No. 21-1147-SHM-tmp |

**ORDER DISMISSING SECOND AMENDED COMPLAINT (ECF NO 13) WITH PREJUDICE;
DENYING LEAVE TO AMEND;
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH;
NOTIFYING GARRISON OF THE APPELLATE FILING FEE;
NOTIFYING GARRISON OF THE COURT'S STRIKE RECOMMENDATION UNDER
28 U.S.C. § 1915(g);
AND CLOSING THE CASE**

Before the Court is the second amended complaint filed by *pro se* Plaintiff Elijah Ismail Muhammad Garrison. (ECF No. 13 (the "SAC").) For the reasons explained below, (1) the SAC is DISMISSED WITH PREJUDICE for failure to state a claim to relief, (2) leave to amend is DENIED, and (3) this case is CLOSED.

**I.  BACKGROUND**

On October 1, 2021, Garrison filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1) and a motion for leave to proceed *in forma pauperis* (ECF No. 2).[1] On October 4,

---

[1] When Garrison filed the initial complaint, he was confined at the Madison County Jail (the "MCJ") in Jackson, Tennessee. (ECF No. 1 at PageID 2.) On December 16, 2021, Garrison

2021, the Court granted leave to proceed *in forma pauperis* and assessed the three hundred and fifty dollars ($350.00) civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA").  (ECF No. 4.)  On October 18, 2021, Garrison filed a motion to amend the complaint.  (ECF No. 5.)  On March 22, 2022, the Court (1) granted the motion to amend, (2) dismissed the Consolidated Amended Complaint (ECF Nos. 1 & 5) for failure to state a claim to relief, and (3) granted leave to amend within twenty-one (21) days of the date of the March 22, 2022 Order.  (ECF No. 12.)  The Consolidated Amended Complaint sued three Defendants: (1) Lisa Balderrama, a Lieutenant with the Madison County Sheriff's Department; (2) the Madison County Sheriff's Department; and (3) Madison County, Tennessee (the "County").  (ECF No. 1 at PageID 2.)

On April 7, 2022, Garrison timely filed the SAC (ECF No. 13), which is before the Court for screening under the PLRA.

The SAC sues the County as the sole Defendant.  (ECF No. 13 at PageID 51 & 57.)  The SAC seeks: (1) an order compelling the County to respond to Garrison's written discovery request attached to the SAC (*id*. at PageID 58-60; ECF No. 13-1 at PageID 65); and (2) three hundred and sixty thousand dollars ($360,000.00) in punitive damages.  (ECF No. 13 at PageID 59-60.)

## II.     ANALYSIS

### A.  The SAC's Factual Allegations

The SAC alleges that the County prohibited Garrison from receiving a "Moorish Circle 7" book (the "Book") that he had ordered from an outside vendor during his confinement at the MCJ. (ECF No. 13 at PageID 52.)  Garrison had joined The Moorish Science Temple of America religion two (2) months before ordering the Book.  (*Id*.)  Balderrama told Garrison that, because the Book

---

notified the Court that he had been transferred to the Bledsoe County Correctional Complex (the "BCCX") in Pikeville, Tennessee.  (ECF No. 9.)

contained pictures, the Book violated the MCJ's "criteria" for inmate mail and Garrison could not have it. (*Id*. at PageID 53; *see also id*. at PageID 61-62 (September 22, 2021 MCJ Grievance Form with Balderamma's response saying "Your book contains pictures … You cannot have it due to the pictures. You are more than welcome to have religious book[s] mailed in from Amazon or Books A Million that meet our criteria").)[2] Garrison alleges that "the denial of [the] [B]ook resulted in the [P]laintiff not being able to possess the proper knowledge on how to worship his new faith." (*Id*. at PageID 54 (alleging that the County's "rules, regulations, criteria, customs, and policies deprived [Garrison] from reading, learning and studying his new religion['s] literature ideology, beliefs, and practices for six (6) months").)[3] The SAC alleges that the County deprived Garrison of his First Amendment rights. (*Id*. at PageID 56 (alleging that the County's "customs and regulation" that prohibit "inmates [from] receiv[ing] books with pictures resulted in [Garrison's] First Amendment right to Free Exercise of religion being violated").) The SAC does not cite to a particular custom, regulation, rule, criterion, or policy of the County that violated Garrison's First Amendment rights. (*See* ECF No. 13.)

**B. Claim Of Violation Of Garrison's First Amendment Rights**

Inmates retain some First Amendment rights, such as the right to communicate with others through the mail, the right of access to the courts, and right to free exercise of religion. Inmates' First Amendment rights are subject to restrictions and regulations "reasonably related to legitimate

---

[2] The SAC does not allege the source from which Garrison ordered the Book. (*See* ECF No. 13.) The plausible inference from the record is that Garrison did not order it from Amazon, Books A Million, or Barnes & Noble. (*See* ECF No. 13 at PageID 62 (Balderrama's response to Garrison's grievance about the Book said, *inter alia*, that Garrison could "have a religious book mailed in from Amazon or Books A Million that meet[s] our criteria").)

[3] The plausible inference from the record is that, because (1) Balderrama's grievance response referred to the MCJ's "criteria," *see* ECF No. 5 at PageID 18, and (2) Garrison ultimately received the Book, *see* ECF No. 1 at PageID 3, the MCJ's correctional staff conducted security review of the Book before providing it to Garrison. (*See also* ECF No. 12 at PageID 46.)

3

penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). Restrictions on prisoner's First Amendment rights are presumed reasonable because they are necessary to protect prisoners and correctional facility personnel. "[T]he core functions of prison administration [are] maintaining safety and internal security." *Id.* at 92. *See also Thornburgh v. Abbott,* 490 U.S. 401, 414 (1989) (prison security is central to all other correctional goals); *Meadows v. Hopkins,* 713 F.2d 206, 209-10 (6th Cir. 1983). When considering claims under the First Amendment, courts "'balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons.'" *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (quoting *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" and is not "an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 89-90. The Supreme Court has held that regulations of incoming correspondence to prisoners are valid if they are "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 421.

Prison authorities are afforded broad discretion in designing and selecting methods of maintaining security. *Turner,* 482 U.S. at 92; *Thornburgh,* 490 U.S. at 416. Decisions about prisons' mail regulations are individualized, based upon the conditions prevailing at a particular institution at a particular time. *Thornburgh,* 490 U.S. at 416-17. "[I]t is rational for [a jail] to exclude [mail] materials that, although not necessarily 'likely' to lead to violence, are determined by the warden to create an intolerable risk of disorder under the conditions of a *particular* prison at a *particular* time." *Id*. at 417 (emphasis added). Where mail is of a class potentially detrimental to order and security, the likelihood that such material will circulate within the prison raises the prospect of a "ripple effect", which requires courts to defer to the "informed discretion of corrections officials." *Thornburgh,* 490 U.S. at 418 (*citing Turner* 482 U.S. at 90, 92).

4

Prison officials, when making decisions about exclusionary rules for categories of mail, need not demonstrate an actual danger to support the reasonableness of the officials' determinations. Officials' exclusionary determinations are reasonable when a potential danger could exist without the restrictions of a challenged prison regulation. *See Bell v. Wolfish,* 441 U.S. 520, 551 n. 32 (1979); *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 133 n. 9 (1977). Prohibition of prisoners' receipt of hardback books -- unless mailed directly from publishers, book clubs, or bookstores -- does not violate First Amendment rights, but is a rational response to an obvious security problem. *Bell*, 441 U.S. at 550. The Sixth Circuit has extended the holding in *Bell* to softcover books and newspapers, when based on security interests and applied in a content-neutral manner. *Ward v. Washtenaw Cnty. Sheriff's Dep't,* 881 F.2d 325, 329 (6th Cir. 1989).

The Madison County Sheriff's Office Inmate Mail and Mail Regulations policy states, in pertinent part: "The Following Items are not allowed to be received via the Mail: … Books may be sent by a mainstream publisher or bookstores only (*i.e.*, Amazon, Books A Million, Barnes and Noble). These books must be in new condition. Inmates will be limited to one (1) book in their possession at any given time. All books must be soft back -- no hard cover publications are allowed. No personal package of any type will be accepted." (*See* https://www.madisoncountysheriffal.org/jail-information (the "MCSO Mail Policy").)

The MCSO Mail Policy sets forth with specificity the types of mail that inmates may not receive while confined at the MCJ. Mail that facilitates, or possibly presents a risk of lawlessness, violence, or rebellion among MCJ inmates is deemed a threat to institutional security. (*See id*.) Mail that contains, *inter alia*, pictures is forbidden as a threat to institutional security. (*See id*.) Regulations such as the MCSO Mail Policy are "expressly aimed at protecting prison security, a legitimate purpose that is beyond question." *See Thompson v. Campbell*, No. 00-1351, 2002 WL 32375450, at *4 (W.D. Tenn. Apr. 5, 2002) (citing *Pell v. Procunier,* 417 U.S. 817, 823 (1974)).

"[W]here prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are neutral in the technical sense expressed in *Turner,* 482 U.S. at 90." *Thompson*, 2002 WL 32375450, at *4.

Even if the Court assumes the SAC alleges that (1) The Moorish Science Temple of America is within Garrison's own "scheme of things" and (2) his belief is sincerely held (*see Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987) and ECF No. 13 at PageID 52-53), the SAC does not state facts demonstrating that the MCSO Mail Policy unconstitutionally infringed on Garrison's practice or belief. *See Kent*, 821 F.2d at 1224-25. The MCSO Mail Policy's prohibition of books from outside sources with pictures -- other than Amazon, Books A Million, and Barnes and Noble -- satisfies the *Turner* neutrality test. The MCSO Mail Policy is "neutral" because it "draw[s] distinctions between [materials] solely on the basis of their potential implications for prison security." *See Thornburgh*, 490 U.S. at 415-16; *see also*, *Beard v. Banks*, 548 U.S. 521, 530-33 (2006) (although inmates have a limited First Amendment right to possess reading material, a regulation that restricts certain reading materials and photographs available to an inmate is not constitutionally deficient as long as it is "reasonably related to the deterrence of bad behavior and the maintenance of order and security in a prison"); *Goss v. Stirling*, No. 6:18-3245, 2020 WL 7055697, at *5 (D.S.C. Dec. 2, 2020) (the defendant-jail's correspondence policy that prohibited inmates from receiving photographs and books "was reasonably related to the legitimate penological interest of inmate security"). The MCSO Mail Policy "further[s] an important or substantial governmental interest unrelated to the suppression of expression." *See Turner Broad. Sys., Inc. v. Fed. Commc'n Comm'n*, 512 U.S. 622, 662 (1994).

The SAC does not allege facts demonstrating that the MCSO Mail Policy violates Garrison's First Amendment rights. Garrison's factual allegations instead demonstrate a rule that is content neutral and reasonably related to legitimate penological interests, *see Turner*, 482 U.S.

at 89-90 -- not an unconstitutional municipal policy that inflicted injury on Garrison. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

The SAC alleges, at most, an "isolated or sporadic government action [that] is *de minimis* and does not constitute a 'substantial burden'" on religious exercise. *See Greenberg v. Hill*, No. 2:07–cv–1076, 2009 WL 890521, at *6 (S.D. Ohio Mar. 31, 2009). Garrison was deprived of the Book for six (6) months while MCJ staff screened it pursuant to the MCSO Mail Policy. (ECF No. 13 at PageID 53-54.) Garrison eventually received the Book. (ECF No. 1 at PageID 3.) Garrison does not allege that he was unable to pray, worship, or read religious materials other than the Book from March 2021 through September 2021. (*See* ECF Nos. 1 & 13.)

For the reasons explained above, the Court DISMISSES the SAC (ECF No. 13) WITH PREJUDICE in its entirety for failure to state a claim to relief.

### III.    AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua*

*sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). The Court has granted Garrison leave to amend. (*See* ECF No. 12.) Garrison's amended pleading fails to state a claim to relief. (ECF No. 13.) The Court DENIES leave to amend because further amendment would be futile.

## IV.    APPELLATE ISSUES

Pursuant to Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), it is CERTIFIED that any appeal in this matter by Garrison would not be taken in good faith. If Garrison chooses to file a notice of appeal, he must either pay the entire five hundred and five dollar ($505.00) appellate filing fee or submit a new *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months, in compliance with 28 U.S.C. §§ 1915(a)-(b).

## V.    NOTICE OF STRIKE RECOMMENDATION

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Garrison's future filings, if any, the Court recommends that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021).

## VI.    CONCLUSION

For the reasons explained above:

  A. The SAC (ECF No. 13) DISMISSED WITH PREJUDICE in its entirety for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Leave to amend is DENIED;

  B. This case is DISMISSED in its entirety. The Court recommends that the dismissal be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons*, 996 F.3d 350;

  C. The Court CERTIFIES that an appeal would not be taken in good faith; and

  D. The Court DENIES leave to proceed *in forma pauperis* on appeal. If Garrison appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. Fed. R. App. P. 24(a)(5).

  The Clerk is directed to prepare a judgment.

  IT IS SO ORDERED, this 20th day of December, 2022.

            *Samuel H. Mays, Jr.*
            SAMUEL H. MAYS, JR.
            UNITED STATES DISTRICT JUDGE